**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JOHN SANWOKAZA WONSEHLEAY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. CIV-26-1226-HE** |
| **v.** | ) | |
| | ) | |
| **MARKWAYNE MULLIN, et al.,** | ) | |
| | ) | |
| **Respondents.**[1] | ) | |

**REPORT AND RECOMMENDATION**

Petitioner John Sanwokaza Wonsehleay, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. Respondents filed a Response, Doc. 9, and Petitioner filed a Reply, Doc. 11.

---

[1] David Venturella was announced as Acting Director of U.S. Immigration and Customs Enforcement on June 1, 2026. He replaces Todd Lyons and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas relief and order his immediate release subject to an appropriate Order of Supervision (OOS) and dismiss without prejudice Petitioner's claims concerning removal to a third country as unripe.

## I. Factual background and procedural history.

Petitioner is a native and citizen of Liberia who was admitted to the United States as a refugee in 1993 and became a lawful permanent resident in 1994. Doc. 1, at 7, 12. Between 2006 and 2008, Petitioner was convicted of three drug-possession offenses in Texas state court. *Id.* at 12-13.

On May 21, 2009, the Department of Homeland Security (DHS) served Petitioner with a Notice to Appear (NTA) charging him as removable under § 237(a)(2)(A)(iii)[4] and 237(a)(2)(B)(i)[5] of the Immigration and Nationality Act (INA). *Id.* at 13. On October 5, 2009, an Immigration Judge (IJ) ordered Petitioner removed to Liberia. *Id.* The Board of Immigration Appeals (BIA) dismissed Petitioner's appeal on February 4, 2010, and his removal order

---

[4] This section is codified at 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

[5] This section is codified at 8 U.S.C. § 1227(a)(2)(B)(i), which provides that an admitted noncitizen who "has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

became administratively final on that date. *Id.* at 14; Doc. 1, Ex. 1, at 7; *see* 8 C.F.R. § 1241.1(a).

ICE could not effectuate Petitioner's removal within the removal period, and on April 26, 2010, following a post-order custody review, ICE released Petitioner from custody subject to an OOS. Doc. 1, at 14; *id.* Ex. 1, at 3, 7-8. The OOS required Petitioner, among other conditions, to appear in person upon request, to report in person to the Dallas Field Office as directed, to notify ICE of any change of residence or employment, to refrain from violating any law, and to assist ICE in obtaining travel documents. Doc. 1, at 7, 14-15. Petitioner remained on the OOS for approximately sixteen years. The parties' dispute concerning Petitioner's compliance with the conditions of his release during that period is addressed below.

On May 15, 2026, ICE officers took Petitioner into custody.[6] Doc. 9, Ex. 1, at 2. Petitioner filed this action on May 27, 2026. Doc. 1. On May 29, 2026, ICE served Petitioner with a Notice of Revocation of Release (Revocation Notice) and conducted an informal interview, at which Petitioner made a

---

[6] The Petition alleges that ICE detained Petitioner on or about May 12, 2026. Doc. 1, at 17. Officer Detrés Bobé attests that the arrest occurred on May 15, 2026. Doc. 9, Ex. 1, at 2. The undersigned uses the date reflected in Respondents' declaration. The record does not otherwise document the arrest itself. Respondents have not submitted a Form I-213, an arrest report, or a declaration from any officer involved in the decision to re-detain Petitioner or in the execution of that decision.

statement. Doc. 9, Exs. 2 & 3. Respondents have also submitted a declaration from Deportation Officer Samuel J. Detrés Bobé. Doc. 9, Ex. 1.

On June 14, 2026, thirty days after re-detaining Petitioner, ICE requested a travel document from the Embassy of the Republic of Liberia. *Id.* at 2. Petitioner remains detained at the Diamondback Correctional Facility in Watonga, Oklahoma.[7]

## II. Petitioner's claims.

Petitioner asserts six claims for relief: (1) a violation of substantive due process under the Fifth Amendment; (2) a violation of procedural due process under the Fifth Amendment; (3) unlawful re-detention under 8 U.S.C. § 1231, 8 C.F.R. § 241.13, and *Zadvydas v. Davis*, 533 U.S. 678 (2001); (4) *ultra vires* agency action; (5) unlawful removal to a third country without statutorily and constitutionally compliant notice and an opportunity to be heard; and (6) punitive third-country banishment in violation of the Fifth and Eighth Amendments. Doc. 1, at 30-40. Petitioner asks the Court to order his immediate release under reasonable conditions of supervision, to bar his

---

[7] The Petition places the Diamondback Correctional Facility in Cushing, Oklahoma, in one instance and in Watonga, Oklahoma, in another. Doc. 1, at 9, 10. The facility is located in Watonga. *See* https://locator.ice.gov/odls/#/search (last visited August 25, 2026).

transfer outside this district during the pendency of this action,[8] and to enjoin his removal to any country other than Liberia. *Id.* at 41.[9] At bottom, Petitioner contends Respondents unlawfully revoked his OOS and that his removal is not significantly likely in the reasonably foreseeable future. *Id.* at 8-9, 35-38.

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are

---

[8] As to this request, the Court addressed this issue in its Order for Response, Doc. 8. The Court lacks jurisdiction to grant that request. Under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* (citation modified). The decision regarding where to detain a noncitizen pending removal is such a discretionary power. Under 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."

[9] Petitioner also requests attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and 5 U.S.C. § 504. Doc. 1, at 41. Any application for fees must be filed within thirty days of final judgment, 28 U.S.C. § 2412(d)(1)(B), and the undersigned does not address that request at this time.

properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## IV. Analysis.

Petitioner's regulatory and procedural due process claims are intertwined, so the undersigned addresses them together. The Court finds Respondents violated their regulations in revoking Petitioner's OOS.[10] Respondents have not shown that Petitioner violated a condition of his release under 8 C.F.R. § 241.13(i)(1), nor have Respondents demonstrated the changed circumstances that § 241.13(i)(2) requires. In addition, Respondents did not follow the procedures mandated by § 241.13(i)(3). Each defect independently warrants relief.

### A. Regulatory framework governing revocation of an OOS.

An agency must follow its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is likewise

[10] Petitioner does not expressly invoke the Administrative Procedure Act (APA) as a freestanding count, but Count Three references it. Doc. 1, at 35. To the extent Petitioner raises an APA claim, the undersigned finds the Court lacks jurisdiction to consider it in this habeas proceeding. The APA does not supply an independent vehicle to challenge the fact or duration of immigration detention. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); 5 U.S.C. § 701(a).

implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752–53 (1979).

When a noncitizen has been detained pursuant to a final order of removal, ICE must release the noncitizen on an OOS if ICE determines there is no significant likelihood of the noncitizen's removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)-(h); *Zadvydas*, 533 U.S. at 699-700. Once ICE releases a noncitizen on an OOS, the agency may revoke that release in only two circumstances: (1) for a violation of the "conditions of release" specified in the OOS; or (2) "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Revocation "for either reason triggers a notification requirement and a review process." *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) (citing 8 C.F.R. § 241.13(i)(3)).

The parties do not dispute that § 241.13(i) governs the revocation of Petitioner's release. The question presented is whether Respondents lawfully revoked it. The undersigned concludes they did not.

### B. Respondents have not shown that Petitioner violated a condition of his release under § 241.13(i)(1).

Respondents rely principally on § 241.13(i)(1), the condition-violation provision, asserting that Petitioner failed to appear for a check-in appointment. Doc. 9, at 8. The record does not support that assertion.

The Revocation Notice identifies the violated condition as follows: "Subject failed to report to the 08/16/2026 CART appointment." Doc. 9, Ex. 2, at 1. The Revocation Notice was served on May 29, 2026, nearly three months before the appointment Petitioner allegedly failed to attend. *Id.* at 2. Officer Detrés Bobé attests to a different date altogether, stating that Petitioner failed to report for a scheduled check-in on August 19, 2025. Doc. 9, Ex. 1, at 2. Respondents do not explain the discrepancy. Even assuming the date on the Revocation Notice is a scrivener's error, Respondents have not produced any documentation showing that Petitioner had a check-in scheduled for August 19, 2025.

Significantly, the declaration's account is contradicted by ICE's own records. On July 14, 2025, approximately five weeks before the allegedly missed appointment, ICE's appointment scheduling system issued Petitioner a written Appointment Confirmation setting his next required appointment at the Dallas Field Office for Wednesday, July 12, 2028. Doc. 1, Ex. 1, at 13-14.

That confirmation was attached to the Petition and was before Respondents when they prepared their Response. Respondents did not address it.

The Reply resolves whatever ambiguity remained. A paralegal at Petitioner's counsel's firm attests that on July 14, 2025, at Petitioner's request and in accordance with ICE's published instructions, she rescheduled Petitioner's upcoming check-in through ICE's online portal at checkin.ice.gov, that the portal confirmed the new appointment date of July 12, 2028, and that she printed the confirmation that same morning. Doc. 11, Ex. 1, at 1-2. A contemporaneous text message to Petitioner's counsel corroborates that account. Doc. 11, at Ex. 2. Petitioner's statement at the informal interview, that he "always attended [his] appointments on time" and did not appear on the date at issue only because counsel's office handled the check-in, is consistent with this documentary record. Doc. 9, Ex. 3, at 1. Respondents nowhere dispute Petitioner's sixteen-year history of in-person compliance. *See* Doc. 1, Ex. 1, at 6, 8.

Respondents selected the condition-violation ground and bear the burden of justifying the resulting detention. *See Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *3 (W.D. Okla. Feb. 20, 2026) (detention "may be maintained only upon compliance with applicable process" (quoting *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 440 (S.D. Tex. 2025))); *cf. Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20,

2025) (placing the burden on Respondents in the context of re-detention under § 241.13(i)).

Respondents characterize Petitioner's statement at the informal interview as an admission that he "did not report to his scheduled check-in on the advice of his counsel." Doc. 9, at 2; *see also id.* at 8, 12. However, read in full, the statement is not an admission that Petitioner failed to attend a required appointment. Petitioner stated that he has "always attended [his] appointments on time," that he has "never intentionally missed a date," and that he did not appear in person on the date in question because his attorney "would check [him] in for the day." Doc. 9, Ex. 3, at 1. That account describes precisely what the documentary record shows: counsel's office rescheduled the appointment through ICE's own check-in portal, and the portal confirmed the new date. Doc. 1, Ex. 1, at 13-14; Doc. 11, Ex. 1, at 1-2. Nothing in the oral statement given by Petitioner identifies the date Petitioner supposedly missed, and Respondents' own submissions identify two different dates, one of which had not yet occurred when the Revocation Notice was issued and Petitioner was re-detained.

More fundamentally, the reason Petitioner did not appear in person is immaterial unless an in-person appearance was required. Section 241.13(i)(1) authorizes revocation for a violation of a condition of release, and the only condition Respondents identify is the reporting requirement. Doc. 9, at 8. Since

the appointment had been rescheduled through the agency's own system, there was no reporting obligation to violate, regardless of the advice given by Petitioner's counsel. Respondents cannot convert Petitioner's explanation of how his counsel handled his check-in into proof of the violation they have otherwise failed to document.

Respondents have produced two mutually inconsistent dates, no documentation of either date, and no response to the confirmation generated by their own scheduling portal. Respondents may possess records reconciling these discrepancies, but they have not produced them, and an agency's obligation to comply with its own regulations cannot be discharged by silence. *Accardi*, 347 U.S. at 268. On this record, the undersigned cannot find that Petitioner violated any condition of his release.

### C. To the extent Respondents invoke § 241.13(i)(2), they have not demonstrated changed circumstances.

Although Respondents rely on the condition-violation provision, portions of the Response invoke the language of § 241.13(i)(2), asserting that "Petitioner's removal has become reasonably foreseeable" considering Liberia's cooperation and recent removal statistics. Doc. 9, at 6, 8. To the extent Respondents intend these assertions as an alternative basis for the revocation, the record does not support one.

Revocation under § 241.13(i)(2) requires that ICE, "on account of changed circumstances," determine that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The regulation contemplates an individualized determination made by the agency as the predicate for revocation, not a rationale assembled in litigation. *See Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023); *Tran*, 2026 WL 1181700, at *3. ICE bears the burden of showing that changed circumstances necessitated revocation. *Pham*, 2025 WL 3243870, at *2. In making that determination, ICE must consider the noncitizen's history of compliance, the Government's prior removal efforts, and the views of the Department of State regarding the prospects for removal. *See* 8 C.F.R. § 241.13(f).

Nothing in the record reflects that any such determination existed at or before Petitioner's re-detention. The corresponding box on the Revocation Notice was left unchecked. Doc. 9, Ex. 2, at 1. ICE did not request a travel document from the Embassy of the Republic of Liberia until June 14, 2026, thirty days after Petitioner's arrest. *Id.* Ex. 1, at 2. A determination that must exist at the time of revocation cannot be supplied by efforts undertaken weeks after the fact. *See Munagi v. McDonald*, 813 F. Supp. 3d 225, 228 (D. Mass. 2025) ("[T]he changed circumstances that make an alien's removal likely in the foreseeable future must have existed *at or before* the [OOS] revocation; post-

hoc justifications are inadequate.") (emphasis added); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (a request for travel documents weeks after revocation "could not have constituted the supposedly changed circumstances underlying the Notice").

Finally, Respondents' reliance on an increase in removals to Liberia is insufficient to meet their burden. Doc. 9, Ex. 1, at 2-3. Judges in this District have repeatedly rejected the notion that an increase in aggregate removals is sufficient evidence of changed circumstances under § 241.13(i)(2). *See Tran*, 2026 WL 1181700, at *3 (a general "upswing" in a country's "willingness to repatriate" its nationals does not supply the individualized determination § 241.13(i)(2) requires); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (rejecting declarations that did not identify any country that had agreed to accept the petitioner); *Pham*, 2025 WL 3243870, at *2 (An "increase in frequency of removals alone does not demonstrate [a] significant likelihood of removal in the reasonably foreseeable future."); *see also Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149-52 (D. Mass. 2025) (rejecting a "general" declaration stating only that the Government "has been successful in removing individuals" to the country at issue).

Here, Respondents have failed to show that *Petitioner's* removal to Liberia is likely in the foreseeable future. Liberia has not agreed to accept Petitioner, has not issued a travel document in the sixteen years since the

removal order became final, and had not received a request for a travel document until a month after Petitioner's re-detention.

### D. Respondents did not follow the procedures required by § 241.13(i)(3).

Whichever substantive ground is invoked, § 241.13(i)(3) supplies the procedure that must accompany any revocation:

> Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.

8 C.F.R. § 241.13(i)(3).

This provision imposes two obligations: (a) notice of the reasons for revocation, and (b) a prompt informal interview upon return to custody. *Id.* The "reasons for revocation" ICE must provide cannot be conclusory; ICE must identify the specific facts supporting its decision. *See Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) (Section 241.13(i)(3) "requires not just notice, but notice that specifies the reason for revocation of his or her release." (internal quotation marks omitted)). Courts in this district have uniformly recognized that these minimum procedures secure the process

the Fifth Amendment requires, such that a wholesale failure to provide them "implicates those constitutional protections directly." *Liang Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026) (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d at 152); *Owdetallah*, 2026 WL 483648, at *5-6; *Pham*, 2025 WL 3243870, at *1 ("A majority of district courts have found such regulatory defects amount to due process violations that entitle a petitioner to habeas relief.") (collecting cases).

Respondents did not comply with either requirement. Petitioner neither received any notice at the time of his arrest on May 15, 2026, nor was Petitioner interviewed "promptly after his . . . return to [ICE] custody." 8 C.F.R. § 241.13(i)(3). The notice and interview came fourteen days later, and only after Petitioner had filed this action. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v.* Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003)). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)).

The process eventually supplied was defective in substance as well as timing. The Revocation Notice identified as the sole reason for revocation an

appointment date nearly three months in the future. A notice premised on a facially impossible event does not identify "the reasons for revocation" within the meaning of § 241.13(i)(3), and an interview conducted in connection with that notice could not afford Petitioner a meaningful "opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). A detainee cannot respond to an accusation of missing an appointment that has not yet occurred. Petitioner received neither adequate notice nor a prompt interview, so Respondents violated § 241.13(i)(3) as well.

### E. The regulatory violations entitle Petitioner to habeas relief, and release is the appropriate remedy.

Courts in this district have repeatedly held that ICE's failure to comply with § 241.13(i) in revoking an OOS renders the revocation unlawful and warrants habeas relief. *See Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *10 (W.D. Okla. Jan. 26, 2026); *Owdetallah*, 2026 WL 483648, at *5-6; *Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1397059, at *3 (W.D. Okla. May 19, 2026), *adopted*, 2026 WL 1495209 (W.D. Okla. May 28, 2026).[11]

[11] This case does not present the curative circumstances found in *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3-4 (W.D. Okla. Oct. 31, 2025). There, the Court concluded that procedural defects had been remedied because the petitioner "underwent a particularized interview process regarding [his] removal after being detained" and the Government made a convincing showing during the litigation that the petitioner's removal to Iran was imminent. *Id.* No comparable showing has been made here.

Under these circumstances, the appropriate remedy is immediate release subject to the conditions of an appropriate OOS. *See Thabata*, 2026 WL 1397059, at *5; *Bui*, 2026 WL 788947, at *6 (ordering immediate release "subject to an appropriate [OOS]").

Because the unlawful revocation entitles Petitioner to release, the undersigned need not separately address whether Petitioner's removal is significantly likely in the reasonably foreseeable future under *Zadvydas*, and does not reach Petitioner's substantive due process (Count One) or *ultra vires* (Count Four) claims, which rest on the same operative facts and seek the same relief. *See* Doc. 1, at 30-32, 38.

**F. Petitioner's third-country removal claims are not ripe.**

Counts Five and Six seek to enjoin a removal that has not been proposed. Respondents represent that ICE has requested a travel document only from Liberia and that no removal to a third country is planned. Doc. 9, at 13-14. Ripeness doctrine prevents courts "from entangling themselves in abstract disagreements over administrative policies" before an administrative decision "has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Petitioner's only designated country of removal is Liberia, Doc. 1, at 13, and nothing in the

record suggests Respondents intend to remove him elsewhere. Counts Five and Six should be dismissed without prejudice.

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus, Doc. 1, as to Counts Two and Three, and order his immediate release from custody within three business days, subject to an appropriate OOS. The undersigned further recommends the Court dismiss Counts Five and Six without prejudice as unripe and deny Petitioner's request for an order barring his transfer outside this District. Finally, the undersigned recommends the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's Order and provide a copy of the Court's Order to the Warden of the Diamondback Correctional Facility.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **September 2, 2026**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[12] The undersigned further advises the parties that failure to make timely

[12] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that the rule establishing a 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under

objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in this matter.

**ENTERED** this 26th day of August, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

Sections 2254 and 2255 of Title 28"); *see also Whitmore v. Parker*, 484 F. App'x 227, 231 & n.2 (10th Cir. 2012).